# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MINNESOTA

SECURITIES AND EXCHANGE COMMISSION,

         Plaintiff,

      v.

THOMAS P. CLARK,

         Defendant.

No.

# COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges as follows:

## NATURE OF THE COMPLAINT

1. In the late summer and fall of 2000, Thomas Clark, then Chief Financial Officer ("CFO") of Health Risk Management, Inc. ("HRMI" or the "company"), failed to disclose material adverse information regarding the settlement of an arbitration between the company's wholly owned Medicaid HMO (the "HMO") and one of the HMO's healthcare providers, Omnia, Inc. ("Omnia"). Clark deliberately mischaracterized a $1.35 million settlement payment by HRMI which resulted in HRMI filing materially false and misleading financial statements in its quarterly reports on Form 10-Q for the second and third quarters of fiscal year 2000. Moreover, Clark hid the Consulting Agreement, and the true dollar amount of the Omnia settlement, from HRMI's auditor and misrepresented to HRMI's auditor that HRMI had informed its auditor of all material contracts for the second and third quarters of 2000.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.

## DEFENDANT

3. Thomas P. Clark, age 56, resides in Edina, Minnesota. At all times relevant to this complaint, Clark was an officer of HRMI. Clark was HRMI's CFO from 1987 until October 2000. As CFO, Clark prepared and reviewed financial statements for both HRMI and the HMO. In October 2000, HRMI's Board of Directors relieved Clark of his CFO title. Clark continued, however, to work on the company's financial statements through the end of 2000. From December 2000 to March 2001, Clark served as the interim president of the HMO subsidiary until he was fired.

## FACTS

### Background of HRMI

4. Health Risk Management, Inc., based in Minneapolis, Minnesota, was a healthcare management company that, among other activities, administered HRM PA, Inc., a small Medicaid HMO in Pennsylvania. HRMI purchased the HMO from Oxford Health Plans, Inc. ("Oxford") in January 1999.

5. At all times relevant to this complaint, HRMI's securities were registered with the Commission pursuant to Section 12(g) of the Exchange Act. HRMI's shares traded on NASDAQ from 1997 until HRMI was delisted on May 22, 2001 for delinquent filings.

6. At all times relevant to this complaint, HRMI was required to file periodic and other informational reports, including Forms 10-K (annual reports) and 10-Q (quarterly reports), with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and the rules and regulations promulgated thereunder. These periodic reports contained, among other things, HRMI's financial statements.

7. Beginning in the summer of 1999, the financial condition of HRMI's HMO subsidiary was deteriorating. By June 30, 2000, the HMO's net worth had fallen below certain statutory requirements and HRMI was legally required to notify the Pennsylvania Department of Insurance (the "DOI"). Although the DOI did not immediately intervene after notification by HRMI, it had the right to require that the HMO take remedial action. The DOI required Medicaid HMOs to maintain a certain statutory net worth to ensure that the HMO could pay outstanding medical claims. If an HMO's net worth fell below the statutory minimum, the HMO was required to notify the DOI and develop a recovery plan. If the plan was unsatisfactory to the DOI, or failed to bring the HMO's net worth above the statutory minimum, the DOI ultimately could seek to have the HMO placed in receivership and have the HMO's assets liquidated by the state.

### The Omnia Dispute and Settlement

8. On September 1, 1997, Oxford entered into a contract with Omnia whereby Omnia managed high-risk pregnancies for the HMO. Omnia continued to service the HMO until the contract expired at the end of 1998.

9. In September 1999, after HRMI acquired the HMO from Oxford, Omnia claimed that the HMO owed Omnia $4.7 million in unpaid bonuses and interest under the contract and commenced an arbitration to resolve the dispute.

10. Clark was responsible for negotiating a settlement with Omnia on behalf of HRMI and its HMO subsidiary.

11. On August 1, 2000, Clark met with Omnia's CEO to finalize a settlement of Omnia's arbitration claims. Clark and Omnia agreed that HRMI would pay Omnia $1.85 million to settle the arbitration.

12. Clark suggested to Omnia, and the parties agreed, that the $1.85 million settlement payment be split between two agreements which were simultaneously executed on August 1, 2000: (1) a Settlement Agreement, which required the HMO to pay Omnia $500,000 in exchange for a release, and (2) a $1.35 million five-year Consulting Agreement which ostensibly provided HRMI and its HMO with the ability to retain Omnia as a consultant for high-risk obstetrical cases. Clark signed both agreements on behalf of HRMI and the HMO.

13. Clark generally was not responsible for negotiating consulting agreements with the HMO's providers or for determining the types of medical or consulting services needed by the HMO.

14. Unlike HRMI's typical agreements with its providers, the Omnia Consulting Agreement required that HRMI pay the entire $1.35 million contract price up front as a non-refundable prepaid "retainer." The $1.35 million "retainer" was not designed to reflect the value of any services described in the Consulting Agreement. Rather, the split of the $1.85 million payment between the two agreements was arbitrary.

15. Clark knew, or was reckless in not knowing, that the Consulting Agreement had no substantial value beyond the settlement of HRMI's dispute with Omnia. The HMO never used any of the consulting services described in the agreement and had no need for such services. After the HMO's original contract with Omnia expired in 1998, the HMO's own providers took over the services that Omnia had previously performed. Moreover, Clark never discussed the need for Omnia's consulting services with anyone before entering into the Consulting Agreement.

16. Omnia had no intention of providing any services to HRMI and viewed the $1.35 million "retainer" as a settlement payment.

17. Clark knew of HRMI's statutory net worth deficiency, that HRMI potentially faced further intervention by the DOI, and that a $1.85 million settlement expense would have further eroded the HMO's net worth.

18. Clark designed the Consulting Agreement to disguise the $1.35 million settlement payment to Omnia. Clark knew that Omnia would not have settled the arbitration for $500,000 and that the additional $1.35 million payment was required to get Omnia to release its claims.

### Clark's Improper Accounting Treatment of the Omnia Settlement

19. As CFO of HRMI and its HMO subsidiary, Clark was responsible for determining the accounting treatment of the Omnia settlement and for drafting and reviewing the financial statements for both HRMI and the HMO for the second and third quarters of 2000.

20.     Although the Settlement Agreement and Consulting Agreement were designed, in tandem, to settle the Omnia dispute, Clark treated the two August 1, 2000 agreements very differently for accounting purposes.

- **HRMI's Second Quarter 2000 Form 10-Q**

21.     Although HRMI's second quarter closed on June 30, 2000, its Form 10-Q for that period was not filed until August 21, 2000, three weeks after HRMI's settlement with Omnia.

22.     Clark instructed HRMI's Controller to include the $500,000 Settlement Agreement as a "subsequent event" in the financial statements for HRMI's second quarter Form 10-Q. Clark instructed HRMI's Controller to book the $500,000 settlement payment, and related legal fees, as an accrued expense on HRMI's second quarter balance sheet. The notes to HRMI's financial statements in its second quarter Form 10-Q disclosed HRMI's settlement with Omnia, represented that HRMI made a $500,000 payment to Omnia to settle its arbitration claims and disclosed that HRMI had incurred $450,000 in legal costs in the arbitration process.

23.     Clark failed to disclose the Consulting Agreement in HRMI's second quarter 2000 financial statements. Clark did not record the $1.35 million payment as an accrued expense on HRMI's balance sheet for the second quarter of 2000, and the notes describing the settlement in HRMI's second quarter Form 10-Q made no mention of the Consulting Agreement or the additional $1.35 million settlement payment to Omnia.

24.     As a result, HRMI's balance sheet for its second quarter 2000 Form 10-Q improperly omitted the $1.35 million expense, HRMI's income statement for that period underreported HRMI's pre-tax loss by $1.35 million (or approximately 34%), and the

6

notes to HRMI's financial statements in its second quarter Form 10-Q included a materially misleading description of the terms of the Omnia settlement.

25. Clark knew, or recklessly disregarded, that the $1.35 million settlement payment called for by the Consulting Agreement should have been recorded, in accordance with Generally Accepted Accounting Principles ("GAAP"), as an accrued expense on HRMI's financial statements for the second quarter of 2000, and that the $1.35 million payment from HRMI should have been disclosed in the description of the Omnia settlement.

26. Clark knew, or recklessly disregarded, that, by failing to record the $1.35 million settlement expense, he caused HRMI to file a periodic report with the Commission that contained materially false financial statements and a materially false description of the Omnia settlement.

- **HRMI's Third Quarter 2000 Form 10-Q**

27. Clark did not tell HRMI's Controller about the Consulting Agreement or the $1.35 million "retainer" until early October 2000 after a preliminary draft of HRMI's third quarter financial statements had already been given to HRMI's auditor.

28. At that time, Clark improperly instructed HRMI's Controller to book the $1.35 million payment to Omnia on HRMI's third quarter balance sheet not as an expense, but as a prepaid asset with a useful life of five years. Per Clark's instructions, an amortization expense of $45,000 for August and September was improperly recognized against the prepaid amount.

29. HRMI filed its third quarter 2000 Form 10-Q on November 14, 2000.

30. As a result of Clark's accounting treatment, HRMI's third quarter 2000 Form 10-Q overstated HRMI's assets by $1.305 million – the cost of the Consulting Agreement ($1.35 million) net of the $45,000 amortization expense – and HRMI's income statement for that period understated HRMI's income by the improperly recorded $45,000 amortization expense. HRMI's third quarter Form 10-Q did not explain the source of the purported $1.35 million asset and made no mention of the Consulting Agreement.

31. Clark knew, or recklessly disregarded, that, in accordance with GAAP, he should not have recorded the $1.35 million settlement payment called for by the Consulting Agreement as an asset on HRMI's financial statements for the third quarter of 2000.

32. Clark knew, or recklessly disregarded, that, by classifying the $1.35 million settlement expense as an asset, he caused HRMI to file a periodic report with the Commission that contained materially false financial statements.

### Clark's Misrepresentations to HRMI's Auditors

33. At all times relevant to this complaint, HRMI retained an outside auditor to conduct HRMI's external annual audits and quarterly interim reviews of HRMI's financial statements.

34. Clark failed to disclose the Consulting Agreement and the true dollar figure of the Omnia settlement to HRMI's auditor.

35. For both the second and third quarters of 2000, Clark signed management representation letters to HRMI's auditor, representing that HRMI had informed HRMI's auditor of all material contracts.

36. At the time he signed the management representation letters, Clark knew, or was reckless in disregarding, that HRMI had entered into the Consulting Agreement, that the agreement was part of the settlement with Omnia, that the Omnia settlement was material to HRMI's financial statements, and that neither the Consulting Agreement nor the true dollar figure of the Omnia settlement had been disclosed to HRMI's auditor.

37. As a result, HRMI's auditor did not discover the Consulting Agreement until February 2001 in the course of its audit of HRMI's December 31, 2000 year-end financial statements. Upon discovering the Consulting Agreement, and learning the facts surrounding the Omnia settlement, HRMI's auditor threatened to resign, telling HRMI that it could no longer trust representations from HRMI's management. After HRMI's auditor complained, HRMI's new CFO, Leland LeBlanc, agreed to expense the entire $1.35 million at June 30, 2000 and restate both the second and third quarter financial statements. The resulting amended Forms 10-Q were filed with the Commission on April 5, 2001.

## **Tolling of the Statute of Limitations**

38. On June 3, 2005, Clark and the Commission executed an agreement tolling any statute of limitations potentially applicable to proceedings brought by the Commission against Clark in this matter (the "Tolling Agreement"). A true and correct copy of the Tolling Agreement is attached hereto as Exhibit A.

39. The Tolling Agreement tolled any applicable statute of limitations from June 3, 2005 until December 1, 2005.

## COUNT I

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)],
and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]**

40. Paragraphs 1 through 37 are realleged and incorporated by reference.

41. Clark, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities, as more fully described in paragraphs 4 through 37 above.

42. Clark knew or was reckless in not knowing of the facts and circumstances described in paragraphs 4 through 37 above.

43. By reason of the foregoing, Clark violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT II

**Violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and
Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1]**

44. Paragraphs 1 through 37 are realleged and incorporated by reference.

45. As set forth more fully above in paragraphs 4 through 37, Clark knowingly circumvented a system of internal accounting controls at HRMI and knowingly falsified HRMI's books and records.

46. By reason of the activities described in paragraph 4 through 37, Clark violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

47. By engaging in the conduct in paragraphs 4 through 37, Clark violated Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] by falsifying and causing to be falsified HRMI's books, records, and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

## COUNT III

**Violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2]**

48. Paragraphs 1 through 37 are realleged and incorporated by reference.

49. By engaging in the conduct described above in paragraphs 33 through 37, Clark directly and indirectly made or caused to be made materially false and misleading statements or omitted or caused others to omit material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading to HRMI's independent auditors in connection with an audit of HRMI's required financial statements and in the preparation and filing of documents or reports required to be filed with the Commission.

50. By engaging in the conduct described in paragraphs 33 through 37, Clark violated Rule 13b2-2 [17 C.F.R. § 240.13b2-2] promulgated under Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)].

## COUNT IV

**Aiding and Abetting HRMI's Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78t(a)], and Exchange Act Rules 12b-20 and 13a-13 [17 C.F.R. §§ 240.12b-20 and 240.13a-13]**

51. Paragraphs 1 through 37 are realleged and incorporated by reference.

52. As set forth more fully above in paragraphs 4 through 37, HRMI violated Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20 and 13a-13 by filing materially false and misleading quarterly reports on Forms 10-Q with the Commission.

53. By engaging in the conduct described in paragraph 4 through 37, Clark knowingly and substantially aided and abetted HRMI's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78t(a)] and Rule 13a-13 thereunder [17 C.F.R. § 240.13a-13].

54. By engaging in the conduct described in paragraphs 4 through 37, Clark knowingly and substantially aided and abetted HRMI's violation of Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20].

## COUNT V

### Aiding and Abetting HRMI's Violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A)]

55. Paragraphs 1 through 37 are realleged and incorporated by reference.

56. As set forth more fully above in paragraphs 4 through 37, HRMI violated Section 13(b)(2)(A) by failing to make and keep books, records, and accounts that accurately and fairly reflected HRMI's transactions and the disposition of its assets.

57. By engaging in the conduct described in paragraphs 4 through 37, Clark knowingly and substantially aided and abetted HRMI's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this Court:

A. Find that Clark committed the violations alleged above;

B. Enter an Order permanently restraining and enjoining Clark from violation of Sections 10(b) [15 U.S.C. § 78j] and 13(b)(5) [15 U.S.C. § 78m] of the Securities

Exchange Act of 1934 ("Exchange Act") and Rules 10b-5 [17 CFR § 240.10b-5], 13b2-1 [17 CFR § 240.13b2-1] and 13b2-2 [17 CFR § 240.13b2-2] promulgated thereunder;

C. Enter an Order permanently restraining and enjoining Clark from aiding and abetting any violation of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m] and Rules 12b-20 [17 CFR § 240.12b-20] and 13a-13 [17 CFR § 240.13a-13] promulgated thereunder;

D. Enter an Order pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] prohibiting Clark from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

E. Enter an Order, pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], requiring Clark to pay a civil penalty; and

F. Grant such other and additional relief as this Court deems just and proper.

Dated: January 27, 2006　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　s/ Jarett B. Decker

　　　　　　　　　　　　　　　　　　　Jarett B. Decker  (DC #436436)
　　　　　　　　　　　　　　　　　　　　　deckerj@sec.gov
　　　　　　　　　　　　　　　　　　　Timothy S. Leiman (IL #6270153)
　　　　　　　　　　　　　　　　　　　　　leimant@sec.gov
　　　　　　　　　　　　　　　　　　　Linda Ieleja Gerstman (IL #6204334)
　　　　　　　　　　　　　　　　　　　　　gerstmanl@sec.gov

　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　Securities and Exchange Commission
　　　　　　　　　　　　　　　　　　　175 West Jackson Blvd., Suite 900
　　　　　　　　　　　　　　　　　　　Chicago, IL 60604
　　　　　　　　　　　　　　　　　　　(312) 353-7390
　　　　　　　　　　　　　　　　　　　(312) 353-7398 (fax)